IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| TORRIE JOHNSON,<br><br>    Plaintiff,<br><br>        v.<br><br>BALTIMORE CITY POLICE<br>DEPARTMENT, *et al.*,<br><br>    Defendants. | CIVIL NO.: WDQ-12-0646 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Torrie Johnson, *pro se*, sued the Baltimore City Police

Department (the "Police Department") and others[1] for civil rights

violations and Maryland state law claims.  Pending are: (1) the

City, McClelan, and Morton's motion for partial summary judgment

and to dismiss for failure to state a claim; (2) Long and

Taylor's motion to dismiss for insufficient service of process;

and (3) the Police Department and Bealefeld's motion to dismiss

for failure to state a claim.  For the following reasons, Long

---

[1] The other defendants are the Mayor and City Council of
Baltimore (collectively, the "City"); former Baltimore City
Police Commissioner Frederick Bealefeld; Baltimore City Police
Officers Adam Long, Bernard Taylor, and John and Jane Does 1-10;
Police Department supervisors Richard and Jane Roes 1-10; the
Director--on May 1, 2010--of the Baltimore City Department of
Transportation (the "BCDT") James Doe; and BCDT Parking Control
Agents Lynette Morton and Linda McClelan.  ECF No. 1.
    In this Memorandum Opinion, references to "the Defendants"
are references to all Defendants whose motions are pending.
"The individual Defendants" are the human movants.

and Taylor's motion to dismiss will be denied; the Police

Department and Bealefeld's motion to dismiss will be granted;

and the City, McClelan, and Morton's motion for partial summary

judgment and to dismiss will be granted in part and denied in

part.

I. Background[2]

On May 1, 2010,[3] Johnson was driving northbound on Charles

Street in Baltimore, Maryland when she pulled over to the side

of the road to make a telephone call. ECF No. 1 ¶¶ 2, 3. She

made the call while the car was running and her foot was on the

parking brake. *Id.* Before the call was completed, a yellow van

---

[2] For the motions to dismiss, the well-pled allegations in the
complaint are accepted as true. *Brockington v. Boykins*, 637
F.3d 503, 505 (4th Cir. 2011). The Court will consider the
pleadings, matters of public record, and documents attached to
the motions that are integral to the complaint and whose
authenticity is not disputed. *See Philips v. Pitt Cnty. Mem'l
Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

   The City, McClelan, and Morton have moved for partial
summary judgment or to dismiss the state law claims, on the
grounds that Johnson did not comply with the 180-day notice
requirement established by Maryland's Local Government Tort
Claims Act ("LGTCA"), Md. Code Ann., Cts. & Jud. Proc. § 5-
304(b). ECF No. 6-1 at 7-8, 16-17. "[N]otice [under the LGTCA]
is a condition precedent to the right to maintain an action for
damages, and compliance with the notice provision should be
alleged in the complaint as a substantive element of the cause
of action." *Renn v. Bd. of Comm'rs of Charles Cnty.*, 352 F.
Supp. 2d 599, 603 (D. Md. 2005). Thus, the Court will construe
the City, McClelan, and Morton's motion as one to dismiss for
failure to state a claim.

[3] According to the Defendants, "other documents" indicate that
the incident occurred on March 1, 2010. ECF No. 6-1 at 2 n.1;
ECF No. 15-1 at 2 n.1.

displaying the City of Baltimore emblem pulled over next to
Johnson's car, "blocking her ability to drive off." *Id.* ¶ 4.  A
few moments later, Morton "banged" on the driver's side window
and informed Johnson that she was putting a boot on the car
because it had unpaid parking tickets. *Id.* ¶ 6.

After placing the car in park, Johnson stepped out to speak
with Morton. ECF No. 1 ¶ 7.[4] As Johnson approached the rear of
the car, she saw McClelan installing a boot on the rear passen-
ger's side tire. *Id.* ¶ 8. Johnson reached down and pulled the
boot off the tire, explaining to Morton and McClelan that they
"can not [sic] put a boot on a vehicle that is occupied and
running." *Id.* ¶ 10. Morton responded that she had not seen
Johnson in the car because of its tinted windows. *Id.* ¶ 11.
Johnson asked Morton and McClelan whether they had seen that the
brake lights were lit and exhaust was coming from the tailpipe.
*Id.* ¶ 12. They indicated they had not. *Id.*

Johnson repeated that Baltimore City law "prohibits parking
enforcement from installing a boot on an occupied [car]," but
Morton and McClelan "continu[ed]" to install the boot; Johnson
removed it twice. ECF No. 1 ¶¶ 13-14. Morton began to install
the boot a third time, and Johnson leaned over to remove it.

---

[4] The car "jarred slightly" after Johnson placed it in park
because it was on an incline. ECF No. 1 ¶ 9. McClelan accused
Johnson of trying to run her over. *Id.*

*Id.* ¶¶ 15-16.   Morton elbowed Johnson "very hard" in the face, causing Johnson's nose to immediately swell.  *Id.* ¶¶ 17, 18.

Johnson called the Mayor's Office to report the incident. ECF No. 1 ¶ 19.  Morton overheard the call and told McClelan that she would call the police to allege that Johnson had assaulted her.  *Id.* ¶ 20.[5] Long, Taylor,[6] and several unknown police officers responded to Morton's call.  *Id.* ¶¶ 22-23.  Long was the supervising officer.  *Id.* ¶ 23.  Johnson told the officers that Morton had struck her in the nose, and showed them the injury.  *Id.* ¶ 24.  Long responded that he believed Morton "because she was a [C]ity employee."  *Id.* ¶ 25.  Long further stated that Morton "just wanted an apology" from Johnson.  *Id.* ¶ 26.  Johnson declined to apologize "for a crime she had not committed."  *Id.* ¶ 27.

Long directed Taylor to arrest Johnson, who did not resist. ECF No. 1 ¶¶ 28-29.  Johnson was charged with second-degree assault on Morton, and "was found 'not guilty' . . . at trial." *Id.* ¶¶ 30-31.[7]

---

[5] Johnson denies assaulting or touching Morton.  ECF No. 1 ¶ 21.

[6] Taylor is no longer a Police Department employee.  ECF No. 13 at 1 n.1.

[7] The parties have provided no details about this trial.

On February 28, 2012, Johnson filed suit,[8] *pro se*, under 42

U.S.C §§ 1983 and 1985 and Maryland tort law.   ECF No. 1 at 5-6.[9]

---

[8] According to Special Investigation Supervisor Aaron Whitcomb of
the Baltimore City Department of Law's Central Bureau of
Investigation, the City has no record of any presuit claim filed
by or on behalf of Johnson seeking compensatory damages for
constitutional and state law violations.   ECF No. 6-2 (Whitcomb
Aff.).

[9] Johnson alleged ten causes of action:
  (1) "Violation of 42 U.S.C. [§] 1983--Municipal Liability,"
      against "Baltimore City";
  (2) "Violation of Fourth and Fourteenth Amendment Rights under
      42 U.S.C. [§] 1983--Supervisory Violations," against the
      City, Bealefeld, unknown Police Department supervisors,
      and Director of the BCDT James Doe, in their personal and
      official capacities;
  (3) "Violation and Conspiracy to Violate Fourth and Fourteenth
      Amendment Rights under 42 U.S.C [§] 1983--Malicious
      Prosecution," against all individual Defendants in their
      personal and official capacities;
  (4) "Violation and Conspiracy to Violate Fourth and Fourteenth
      Amendment Rights under 42 U.S.C. [§] 1985(2)—Obstruction
      of Justice," against all individual Defendants in their
      personal and official capacities;
  (5) "Violation and Conspiracy to Violate First, Fourth, and
      Fourteenth Amendment Rights under 42 U.S.C [§] 1985(3)--
      Conspiracy," against all individual Defendants in their
      personal and official capacities;
  (6) "Violation and Conspiracy to Violate Fourth[] and
      Fourteenth Amendment Rights under 42 U.S.C. [§] 1983--
      Freedom from Unreasonable Searches and Seizures," against
      all individual Defendants in their personal and official
      capacities;
  (7) "Violation and Conspiracy to Violate First, Fourth, and
      Fourteenth Amendment Rights under 42 U.S.C. [§] 1983--
      False Arrest/False Imprisonment," against all individual
      Defendants in their personal and official capacities;
  (8) "False Arrest and Imprisonment and Conspiracy to Falsely
      Arrest and Imprison," against all individual Defendants in
      their personal and official capacities;
  (9) "Abuse of Process and Conspiracy to Abuse Process,"
      against all individual Defendants in their personal and
      official capacities; and

She alleged, *inter alia*, that the City, Police Department, and individual supervisory Defendants engaged in policies, customs, and supervision requiring police officers to "make arrests without probable cause, and to thereafter falsely imprison citizens that have been falsely arrested," and requiring parking control agents to "disable privately owned vehicles without legal justification."  *Id.* ¶¶ 38-39, 46.  These policies "made it foreseeable that police officers[] and parking control agents . . . would violate [persons'] constitutional rights in precisely the manner that [Johnson's] rights were violated." *Id.* ¶ 47.  Johnson alleged that the individual Defendants conspired to effect, and did effect, an unreasonable search and seizure of her person and property.  *Id.* ¶ 40.[10]  "As a direct and proximate result of these acts," Johnson alleged that she experienced damages including personal injuries, pain and

---

(10) Negligence, against all individual Defendants in their personal and official capacities.

[10] Specifically, Johnson asserted that: (1) her arrest and imprisonment were based on "Defendants['] knowing[,] deliberated, and reckless disregard for the truth," "wherein they made false statements and omissions that created falsehoods that were incorporated into documents, including the false Statement of Probable Cause"; (2) "Defendants" intentionally deprived Johnson of freedom of movement by "detaining and restraining" her without legal justification; (3) "Defendants" conspired to "abuse the criminal process" in the State of Maryland; (4) "Defendants" initiated criminal proceedings against her for an illegal and improper purpose; and (5) "Defendants" breached their duty of care "to monitor themselves and their subordinates, and to report suspected misconduct." ECF No. 1 ¶¶ 41-45.

suffering, severe mental anguish, lost income, inadequate
medical care, degradation, "permanent loss of natural
psychological development," and "restriction of all forms of
personal freedom." *Id.* ¶ 51.  She demanded a jury trial and
requested $1 million in damages.  *Id.* at 7.

On March 2, 2012, Johnson was granted leave to proceed *in
forma pauperis.*  ECF No. 3.  The Order directed the Clerk and
U.S. Marshal to "take all necessary steps" to effect service of
process on all defendants.  *Id.* at 2; *see* Fed. R. Civ. P.
4(c)(3).  The summonses were issued on March 20, 2012 and
returned executed on April 16, 2012.  ECF Nos. 4, 5.

On April 27, 2012, the City, McClelan, and Morton timely
moved for partial summary judgment and to dismiss.  ECF No. 6.
On May 23, 2012, Long and Taylor moved to dismiss for insuffi-
cient service of process.  ECF No. 13.[11]  On May 29, 2012, the
Police Department and Bealefeld timely moved to dismiss for
failure to state a claim.  ECF No. 15; *see* ECF No. 10.  On June
21, 2012, Johnson opposed the City, *et al.*'s motion for partial
summary judgment and to dismiss.  ECF No. 25.  On July 9, 2012,
the City, McClelan, and Morton timely replied.  ECF No. 28.  On
July 23, 2012, Johnson opposed Long and Taylor's motion to
dismiss.  ECF No. 31.  Also on July 23, Johnson opposed the
Police Department and Bealefeld's motion to dismiss.  ECF No.

---

[11] Long and Taylor's motion was untimely.  *See* Docket.

32.[12]  On August 9, 2012, Long, Taylor, the Police Department,

and Bealefeld timely filed their replies.  ECF Nos. 33, 34.

II. Analysis

  A. Legal Standards

    1. Rule 12(b)(5)

    Under Fed. R. Civ. P. 12(b)(5), a defendant may move to

dismiss for insufficient service of process.  If service is

contested, the "plaintiff bears the burden of establishing [its]

validity . . . pursuant to Rule 4."[13]  *O'Meara v. Waters*, 464 F.

Supp. 2d 474, 476 (D. Md. 2006).  An individual may also be

served by "following state law for serving a summons in an

action brought in courts of general jurisdiction in the state

where the district is located or where service is made."  Fed.

R. Civ. P. 4(e)(1).[14]

---

[12] All of Johnson's oppositions were untimely.  *See* ECF Nos. 12,
29, 30.

[13] Under Rule 4, an "individual within a judicial district of the
United States" may be served by: (1) "delivering a copy of the
summons and of the complaint to the individual personally;" (2)
leaving a copy of each at the individual's dwelling or usual
place of abode with someone of suitable age and discretion who
resides there;" or (3) "delivering a copy of each to an agent
authorized by appointment or by law to receive service of
process."  Fed. R. Civ. P. 4(e)(2).

[14] Maryland law provides:

    Service of process may be made within this State . . .
    (1) by delivering to the person to be served a copy of
    the summons, complaint, and all other papers filed
    with it; (2) if the person to be served is an

"Generally, when service of process gives the defendant actual notice of the pending action, the courts may construe Rule 4 liberally." *O'Meara*, 464 F. Supp. 2d at 476. But, the "plain requirements for the means of effecting service may not be ignored." *Id.* Although insufficient service of process does not necessarily warrant dismissal, the court may dismiss the complaint for failure to comply with Rule 4 or quash the service, thereby permitting the plaintiff to attempt to properly serve the defendant. *See Vorhees v. Fischer & Krecke*, 697 F.2d 574, 575-76 (4th Cir. 1983).

2. Rule 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

---

individual, by leaving a copy of the summons, complaint, and all other papers filed with it at the individual's dwelling house or usual place of abode with a resident of suitable age and discretion; or (3) by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: 'Restricted Delivery--- show to whom, date, address of delivery.' Service by certified mail under this Rule is complete upon delivery.

Md. Rule 2-121(a).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

B. Insufficient Service of Process (ECF No. 13)

Long and Taylor move to dismiss, with prejudice, under Fed. R. Civ. P. 12(b)(5) for insufficient service of process. ECF No. 13; ECF No. 13-1 at 6. In support, they assert that they were served at "500 E. Baltimore Street, Baltimore, Maryland 21202," which "is not the official mailing address for the [Police Department]."[15] ECF No. 13-1 at 4; *see* Fed. R. Civ. P. 4(e)(1); Md. Rule 2-121(a). Neither Long nor Taylor was served personally, received a copy of the summons or complaint at his home or dwelling place, or appointed anyone to accept service on his behalf. ECF No. 13-1 at 4; *see* Fed. R. Civ. P. 4(e)(2).[16] Johnson counters that the Baltimore City Solicitor's Office "directed" her to mail all summonses for police officers to the officers' "place of employment." ECF No. 31 at 3.

In accordance with Maryland Rule 2-121(a)(3), Johnson mailed a copy of the summons and complaint by certified mail. ECF No. 5 at 1-5. The mailing was not sent to the Police Department's "regular" mailing address. *See* ECF No. 13-1 at 4 n.2; *supra* note 15. However, it identified Adam Long and Bernard Taylor as Baltimore City Police Officers. ECF No. 5 at

---

[15] *See also Balt. Police Department*, http://www.baltimorepolice. org/contact-us/mailing-address (last visited Dec. 27, 2012) (listing the Police Department's official mailing address).

[16] Taylor no longer worked for the Police Department when Johnson's summons and complaint were purportedly served. ECF No. 13-1 at 4.

1-5.  Long and Taylor have actual notice of Johnson's complaint,
and have not argued that maintenance of the suit would be
prejudicial.  Thus, their motion to dismiss for insufficient
process will be denied.  *See Miller v. Balt. City Bd. of Sch.
Comm'rs*, 833 F. Supp. 2d 513, 519 (D. Md. 2011); *O'Meara*, 464 F.
Supp. 2d at 476.

C. Failure to State a Claim (ECF Nos. 6, 15)

Johnson asserts that the City and Police Department[17] had a
policy, custom, or practice requiring police officers to make
illegal arrests and requiring parking control agents to unlaw-
fully disable privately owned vehicles--or that the City and
Police Department were deliberately indifferent to such
unconstitutional abuses--in violation of 42 U.S.C. § 1983.  ECF
No. 1 ¶¶ 46, 47.  Johnson further asserts that the individual
Defendants deprived and conspired to deprive her of her First,
Fourth, and Fourteenth Amendment rights through inadequate
discipline, training, and supervision; malicious prosecution;
obstruction of justice; unreasonable searches and seizures; and
false arrest, in violation of 42 U.S.C. §§ 1983 and 1985(2),
(3).  *Id.* at 5-6.  Johnson also alleges that the individual
Defendants committed false arrest and imprisonment, abuse of

---

[17] Count 1 (Municipal Liability) is asserted against "Baltimore
City."  ECF No. 1 at 5.  The Court will construe the complaint
to assert Count 1 against the City and the Police Department.
*See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

process, conspiracy to commit those torts, and negligence, in violation of Maryland law. *Id.* at 6.

1. § 1983 (Counts 1-3, 6-7)

Section 1983 provides a remedy against any person who, acting under color of law, deprives another of constitutional rights. 42 U.S.C. § 1983. It "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citation omitted).

Johnson alleges that the Defendants violated her rights under the First, Fourth, and Fourteenth Amendments through malicious prosecution, unreasonable searches and seizures, false arrest, and a policy or custom of encouraging and requiring such unconstitutional practices and providing inadequate supervision. ECF No. 1 at 5-6.

a. The City and Police Department's Liability (Counts 1, 2)

Johnson alleges that, at all relevant times, the City and Police Department had a policy or custom of requiring police officers to "make arrests without probable cause, and to thereafter falsely imprison citizens that have been falsely arrested," and requiring parking control agents to "disable privately owned vehicles without legal justification." ECF No.

1 ¶ 46.   These policies "made it foreseeable that police officers, and parking control agents . . . would violate peoples' [sic] constitutional rights," and "were the moving forces behind [Johnson's] false arrest and imprisonment."  *Id.* ¶¶ 47-48.   Johnson further alleges that she suffered constitutional injuries "[a]s a result of" the City's failure to supervise.  *Id.* ¶ 49.

The City and Police Department argue that, even assuming Johnson's constitutional rights were violated, Johnson has "failed to plead any facts that support the contention that the actions of the personnel involved were conducted pursuant to a policy created or endorsed by the City."  ECF No. 6-1 at 4-5; *see* ECF No. 15-1 at 6, 11-15.  The City emphasizes that Johnson has not provided "any information that suggests that there is widespread abuse of the constitutional liberties of similarly situated citizens."  ECF No. 6-1 at 6.  Finally, the City contends that it cannot be liable for BCPD officers under § 1983 because the Police Department is a state agency.  ECF No. 6-1 at 6 (*quoting Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 549 (D. Md. 2003)).[18]

A municipality may be liable under § 1983 only if "the

---

[18] The Court rejects--as it has in the past--the City's argument that it is not liable for Police Department policies as a matter of law.  *See, e.g., Humbert v. O'Malley*, No. WDQ-11-0440, 2011 WL 6019689, at *5 (D. Md. Nov. 29, 2011); *see also id.* at *5 n.16 (collecting cases).

municipality *itself* causes the constitutional violation."[19]
Liability may arise because of a policy or custom that is
"fairly attributable to the municipality" and the "moving force"
behind the constitutional violation.  *Spell v. McDaniel*, 824
F.2d 1380, 1387 (4th Cir. 1987).  A municipal policy may consist
of written ordinances and regulations, or "certain affirmative
decisions of individual policymaking officials."  *Carter v.
Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (internal citations
omitted).  Municipal custom exists when "a particular practice
is so persistent and widespread and so permanent and well
settled as to constitute a custom or usage with the force of
law."  *Id.*  Absent a direct policy or custom, municipal
liability may be inferred from "deliberate indifference" to the
risk of a constitutional violation because of "a known history
of widespread constitutional deprivations on the part of city
employees."[20]

---

[19] *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis
in original).  A municipality cannot be liable under a theory of
*respondeat superior*.  *Monell v. Dep't of Soc. Servs. of N.Y.*,
436 U.S. 658, 694 (1978).

[20] *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 411 (1997);
*Milligan v. City of Newport News*, 743 F.2d 227, 229-30 (4th Cir.
1984); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112,
127 (1988) (plurality opinion) (liability for municipal "custom"
prevents "egregious attempts by local governments to insulate
themselves from liability for unconstitutional policies," which
they have ratified *sub silentio*).

Supervisory inaction can also expose municipalities to § 1983 liability. *See, e.g.*, *Marshall v. Ilczuk*, No. HAR-93-2182, 1993 WL 642946, at *5 (D. Md. Jan. 3, 1994).  To prevail, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).  This theory recognizes that "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict."  *Id.* at 798 (internal quotation marks omitted).  "[T]here is no limit to the reach of supervisory liability and it can extend 'to the highest levels of state government . . . by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'"  *Brown*, 2011 WL 2935037, at *6 (*quoting Shaw*, 13 F.3d at 798).

The police commissioner supervises the "affairs and operations" of the Police Department.[21]  The mayor appoints the

---

[21] *Mayor & City Council of Balt. v. Clark*, 944 A.2d 1122, 1129 (2008).

16

police commissioner, subject to the city council's approval, and has the sole power to fire the commissioner for cause.[22]  This Court has recognized the mayor and city council's "involvement in and knowledge of the affairs of the [Police Department]." *Mason v. Mayor & City Council of Balt.*, No. HAR-95-0041, 1995 WL 168037, at *3 (D. Md. 1995).

Johnson appears to allege that Long and Taylor unlawfully arrested and imprisoned her, and Morton and McClelan unlawfully seized her car and made false statements to the police.  *See, e.g.*, ECF No. 1 ¶¶ 41-43, 49.  Even if these allegations are true, Johnson has alleged no facts to support her assertion that the individual Defendants' actions were committed pursuant to a policy or custom.  *Cf. Sewell v. Balt. City Police Dep't*, No. WMN-12-1667, 2012 WL 4049278, at *2 (D. Md. Sept. 12, 2012). Johnson's § 1983 claims against the City and Police Department must be dismissed.

b. Bealefeld's Liability (Counts 2, 3, 6, 7)

Johnson has sued Bealefeld in his official and personal capacities,[23] alleging that Bealefeld deprived and conspired to

---

[22] *Clark*, 944 A.2d at 1129-30.

[23] An "official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  "[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.*

deprive her of her First, Fourth, and Fourteenth Amendment rights through inadequate supervision, malicious prosecution, unreasonable searches and seizures, and false arrest. ECF No. 1 at 5-6. Bealefeld argues that Johnson has failed to allege he "had personal knowledge of the underlying incident or took, or failed to take, any action related to the incident." ECF No. 15-1 at 7. Bealefeld further argues that, assuming his involvement in the incident, he is entitled to public official immunity. *Id.* at 7-8. Finally, Bealefeld asserts that there is no basis for supervisory liability. *Id.* at 9-10.

The complaint does not allege that Bealefeld was personally involved in the incident. *See generally* ECF No. 1. Instead, Johnson appears to allege that Bealefeld is accountable for the actions of Long and Taylor because he inadequately supervised them. As discussed above, Johnson must show that Bealefeld had "actual or constructive knowledge" that (1) police officers were engaged in conduct posing a "pervasive and unreasonable risk" of constitutional injury to citizens like Johnson; (2) Bealefeld's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) there was an "affirmative causal link" between Bealefeld's inaction and Johnson's alleged constitutional injuries. *Shaw*, 13 F.3d at 799.

18

Johnson asserts that she suffered false arrest and imprisonment, unlawful seizure of her car, and additional physical, emotional, and financial damages, "[a]s a result of" Bealefeld's inadequate supervision, presumably of Long and Taylor. ECF No. 1 ¶ 49. But Johnson has pled no facts to suggest Bealefeld's knowledge of unconstitutional conduct by the officers, nor are there facts to suggest that Bealefeld's response to any such knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices." *Shaw*, 13 F.3d at 799. Finally, Johnson has pled no facts demonstrating an "affirmative causal link" between Bealefeld's inaction and her alleged injuries. *Id.* Johnson's § 1983 claims against Bealefeld must be dismissed.[24]

> c. Morton and McClelan's Liability (Counts 3, 6, 7)

Johnson asserts § 1983 claims against Morton and McClelan for malicious prosecution, unreasonable searches and seizures, and false arrest. ECF No. 1 at 5-6. Morton and McClelan argue that (1) they acted lawfully when they attempted to boot Johnson's car and Johnson was provided an opportunity to contest the act, and (2) neither Morton nor McClelan was acting under

---

[24] Because Johnson has not plausibly pled Bealefeld's personal involvement or supervisory liability, the Court need not consider Bealefeld's alternative public official immunity argument. *See* ECF No. 15-1 at 7-8.

19

color of state law when she reported the altercation between
Johnson and Morton to the police.  ECF No. 6-1 at 8-9.  Further,
Johnson "has not pointed to a single fact" that they conspired
to violate her civil rights.  *Id.* at 9.  Because Johnson's
claims under § 1983 "are connected only to these acts," Morton
and McClelan contend that the claims must fail.  *Id.*

      i. The Boot Installation (Count 6)

Under the Fourth Amendment, "[a] 'seizure' of property . .
. occurs when 'there is some meaningful interference with an
individual's possessory interests in that property.'"  *Soldal v.
Cook Cnty.*, 506 U.S. 56, 61 (1992) (*quoting United States v.
Jacobsen*, 466 U.S. 109, 113 (1984)).

"Procedural due process is simply a guarantee of fair
procedures--typically notice and an opportunity to be heard."
*Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008)
(internal citations omitted).  Thus, "the existence of state
remedies *is* relevant for a § 1983 action based on procedural due
process, for [t]he constitutional violation actionable under §
1983 is not complete . . . unless and until the State fails to
provide due process."[25]  To establish a procedural due process
claim, a plaintiff must show that "(1) [she] had property or a
property interest (2) of which the defendant deprived [her] (3)

_____

[25] *Mora*, 519 F.3d at 230 (emphasis and alteration in original)
(internal quotation marks omitted).

without due process of law." *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005). "Possessory interest in a vehicle is sufficient to invoke the protection of the Fourth and Fourteenth Amendments." *Morozov v. Howard Cnty.*, No. MJG-10-1515, 2012 WL 2048296, at *3 (D. Md. June 5, 2012).

Substantive due process protects the individual against arbitrary governmental action. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). To establish a substantive due process claim, a plaintiff must show "state action so arbitrary and irrational, so unjustified by any circumstance or govern-mental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Mora*, 519 F.3d at 230 (internal quotation marks omitted).

Morton and McClelan argue that Johnson's claim "must fail" because their conduct was lawful under the Baltimore City Code and the Code provided Johnson due process of law. ECF No. 6-1 at 13-14. Johnson counters that Morton and McClelan acted unlawfully because she was in the car when they first attempted to install the boot. ECF No. 25 at 4-5.

Under Balt. City Code art. 31, § 31-21(a)(2),

When any unattended motor vehicle is found parked at any time upon any street of the City of Baltimore against which there are 3 or more unsatisfied

21

> citations for parking violations, and when a period of
> 30 days or more has elapsed since the 3rd unsatisfied
> citation, the [Police Commissioner of Baltimore or his
> designee[26]] is authorized to cause such vehicle . . .
> immobilized in such manner as to prevent its
> operation.

Under the Code's express terms, only a parked, unattended car is

subject to immobilization. *See id.* Johnson has alleged--and

Morton and McClelan do not appear to contest--that Johnson was

in the car, with the engine running, when Morton decided to

install the boot. *See* ECF No. 1 ¶ 6; ECF No. 6-1 at 13. Morton

and McClelan's asserted mistake as to Johnson's presence does

not render their conduct lawful; the Code's language does not

include a knowledge requirement. Thus, Johnson has plausibly

alleged that Morton and McClelan negligently or intentionally

deprived her of property.

"[T]he Due Process Clause of the Fourteenth Amendment is

not violated when a state employee negligently [or intention-

ally] deprives an individual of property, provided that the

state makes available a meaningful postdeprivation remedy."

*Hudson v. Palmer*, 468 U.S. 517, 531, 533 (1984) (*citing Parratt*

*v. Taylor*, 451 U.S. 527 (1981)).

---

[26] *See* Balt. City Code art. 31, § 31-1(b) ("The 'Commissioner'
herein referred to is the Police Commissioner of Baltimore or
any person designated by him to effectuate the purposes of this
subtitle.").

Under Balt. City Code art. 31, § 31-25(a), the Commissioner or his designee[27] must "conspicuously" place a notice on an immobilized car "sufficient to warn any individual that the vehicle has been immobilized." The notice must also inform the owner of her right to a hearing. § 31-25(a)(2). Section 31-27(a)(1) describes the hearing procedures, providing that the car's owner "has the right to contest the validity of the immobilization at a hearing within 72 hours . . . from the time said owner files an application for such hearing with a hearing officer." The hearing may be secured before payment of the booting fee or other charges, and before the immobilized car is released. *Id.* § 31-27(a)(2). The owner must file her application within 10 days of receiving written notice of the immobilization. *Id.* § 31-27(b)(2).

"Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified."[28] To determine whether an individual has received fair notice, a court "must examine the relevant facts of each case." *United States v. Hoechst Celanese Corp.*, 128 F.3d 216, 224 (4th Cir. 1997). Johnson "was present at the time Morton and McClelan attempted to boot her vehicle and clearly knew what was occurring." ECF No. 6-1 at 14. Morton and

---

[27] *See supra* note 26.

[28] *Baldwin v. Hale*, 68 U.S. (1 Wall.) 223, 233 (1863).

McClelan further argue that, even if Johnson had alleged that she did not receive notice, "clearly articulated avenues [were] available to contest the detainment or immobilization."  ECF No. 6-1 at 14.  Although Johnson had actual notice of her car's immobilization, no party has indicated whether Johnson was informed--orally or otherwise--of her right to a postdeprivation hearing.[29]  Because it is unclear whether Johnson was notified of her right to be heard, Count 6 against Morton and McClelan will not be dismissed for failure to state a claim.

     ii.Statements to the Police (Counts 3, 6, 7)

"A federal civil rights claim based upon § 1983 has two essential elements: [A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (internal quotation marks omitted).  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the

---

[29] *Cf. Richter v. Maryland*, 590 F. Supp. 2d 730, 737 (D. Md. 2008) (no procedural due process violation when plaintiff was personally notified of the parking ticket and told to move or remove the car within 48 hours, and, when he did not comply, was advised of the process for retrieving the car after it was towed), *aff'd sub nom. Richter v. Beatty*, 417 F. App'x 308 (4th Cir. 2011).

authority of state law." *West v. Akins*, 487 U.S. 42, 49 (1988)
(internal quotation marks omitted).

"[G]enerally, a public employee acts under color of state
law while acting in his official capacity or while exercising
his responsibilities pursuant to state law." *West*, 487 U.S. at
50. Employment by a municipality is relevant--but not
conclusive--in determining whether a person was acting under
color of state law.[30] Only "the nature of the act performed is
controlling." *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870,
872 (4th Cir. 1989).

Morton and McClelan argue that they "were not acting under
the color of state law at any point after the alleged
altercation . . . occurred." ECF No. 6-1 at 11. Morton and
McClelan emphasize that "**any** individual can provide the police
with a statement concerning a particular incident." *Id.*
(emphasis in original). They conclude that, "to the extent
Johnson's claims are related to the actions occurring after the
altercation between Morton and Johnson, "they must be dismissed
as a matter of law." *Id.* at 11-12. The Court does not agree.
Johnson's alleged assault on Morton occurred immediately after,
and directly because of, Morton and McClelan's exercise of
authority under color of state law to immobilize Johnson's car.

---

[30] *Culberson v. Nichols*, No. 8:11-1708-TMC, 2012 WL 81516, at *2
(D.S.C. Jan. 11, 2012), *aff'd*, No. 12-1179, 2012 WL 6098232 (4th
Cir. Dec. 10, 2012).

*See generally* ECF No. 1 ¶¶ 4-6, 10-17.   That any person *can* provide a statement to the police is irrelevant: *Morton and McClelan's* statements to the police, which led to Johnson's complaint, did not "arise[] out of purely personal circum- stances."   *Cf. Rossignol v. Voorhaar*, 316 F.3d 516, 523-24 (4th Cir. 2003).[31]   Counts 3, 6, and 7 against Morton and McClelan will not be dismissed for failure to state a claim.

2. § 1985 (Counts 4-5)

Johnson alleges that the individual Defendants conspired to violate her civil rights under subsections (2) and (3) of 42 U.S.C. § 1985.   ECF No. 1 at 5-6.

a. § 1985(2) (Count 4)

Subsection (2) of § 1985 contains five clauses;[32] Count 4 ("Obstruction of Justice") appears to allege violation of the

---

[31] *See also Rossignol*, 316 F.3d at 524 ("[I]t is clear that if a defendant's purportedly private actions are linked to events which arose out of his official status, the nexus between the two can play a role in establishing that he acted under color of state law."); *id.* (*citing Layne v. Sampley*, 627 F.2d 12, 13 (6th Cir. 1980) (finding that an off-duty, plainclothes police officer, who had been on vacation for several days and was sitting in his personal car when he shot the plaintiff, acted under color of state law because "the animosity grew out of [the officer's] performance of his official duties."); *United States v. Causey*, 185 F.3d 407, 415-16 (5th Cir. 1999) (finding that a police officer acted under color of state law when he conspired with civilians to murder a woman who had filed police brutality charges against him, in part because his desire to retaliate against the victim arose out of her criticism of his official capacity actions)).

[32] *See Sellner v. Panagoulis*, 565 F. Supp. 238, 245 (D. Md. 1982).

fourth.  The fourth clause of § 1985(2) provides a cause of action against those who "conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws."  42 U.S.C. § 1985(2).  A plaintiff must show that the defendants "were motivated by racial or other class-based, invidiously discriminatory animus." *Sellner*, 565 F. Supp. at 246.[33]  The City, McClelan, and Morton argue that Johnson has failed to allege such animus.  ECF No. 6-1 at 15.  They are correct. Because Johnson has failed to allege race or class-based discriminatory animus, Count 4 must be dismissed.[34]

---

[33] *See Scott v. Mountain Mission Sch.*, 809 F.2d 786 (Table), 1987 WL 36169, at *2 (4th Cir. 1987) (per curiam) (affirming district court's dismissal of § 1985(2) claim for failure to allege a racial or other class-based animus); *accord Daigle v. Gulf State Utils. Co.*, 794 F.2d 974, 979 (5th Cir. 1986) (race or class-based animus required for § 1985(2) conspiracy to deny equal protection of the laws); *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1429 (8th Cir. 1985) (same); *Bretz v. Kelman*, 773 F.2d 1026, 1029 (9th Cir. 1985) (same); *Williams v. St. Joseph Hosp.*, 629 F.2d 448, 451 (7th Cir. 1980) (same); *Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir. 1978) (same), *cert. denied*, 436 U.S. 906 (1978); *Brawer v. Horowitz*, 535 F.2d 830, 840 (3d Cir. 1976) (same); *Hahn v. Sargent*, 523 F.2d 461, 429 (1st Cir. 1975) (same), *cert. denied*, 425 U.S. 904 (1976).

[34] The Court need not determine whether Johnson plausibly pled § 1985 conspiracy.  *See* ECF No. 6-1 at 15-16.

b. § 1985(3) (Count 5)

Like the fourth clause of subsection (2), § 1985(3) requires a plaintiff to show that the conspiracy involves two or more people "motivated by a specific class-based, invidiously discriminatory animus." *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). Johnson has failed to show such animus; the Court must dismiss Count 5.

3. State Law Claims (Counts 8-10)

Johnson alleges that the individual Defendants conspired to commit--and committed--false arrest and imprisonment, abuse of process, and negligence. ECF No. 1 at 6. Under the LGTCA, "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." Md. Code Ann., Cts. & Jud. Proc. § 5-304(b)(1).[35] "[N]otice [under the LGTCA] is a condition precedent to the right to maintain an action for damages, and compliance with the notice provision should be alleged in the complaint as a substantive element of the cause of action." *Renn v. Bd. of*

---

[35] "Unliquidated damages are such as rest in opinion only, and which cannot be ascertained by computation or calculation." *Litsinger v. Ross*, 44 A.2d 435, 436 (Md. 1945).

*Comm'rs of Charles Cnty.*, 352 F. Supp. 2d 599, 603 (D. Md. 2005).[36]

The Defendants argue that Johnson's complaint is "defective on its face" because it does not plead compliance with the LGTCA's notice requirement. ECF No. 6-1 at 16-17; ECF No. 6-2; *see* ECF No. 34 at 8. Johnson counters that she sent a "notice of intent to file a law suit" to the State's Attorney of Baltimore City on August 31, 2010. ECF No. 25 at 3.[37] She admits that she did not include the City, Morton, or McClelan in the notice, but contends that the 180-day notice is "not required when a Defendant is being sued individually." *Id.*

The LGTCA notice requirement applies to all City defend-

---

[36] *See also Hansen v. City of Laurel*, 25 A.3d 122, 130 (Md. 2011) ("It is a longstanding principle of Maryland jurisprudence that the LGTCA notice provision is a condition precedent to maintaining an action directly against a local government or its employees.") (footnote omitted)).

[37] Johnson attached the purported notice to her opposition to the City, McClelan, and Morton's motion. *See* ECF No. 25-1. The Court will not rely on this evidence--which was not attached to the complaint--in considering the City, McClelan, and Morton's motion to dismiss. *See Philips*, 572 F.3d at 180. However, the Court notes the letter's allegation that Johnson was "jailed for no reason" on March 1, 2010, not May 1. ECF No. 25-1. Thus, on the face of the letter, Johnson's notice was two days late. Further, it was addressed to the wrong party: the LGTCA requires that, if the defendant local government is Baltimore City, notice be given to the City Solicitor. Md. Code Ann., Cts. & Jud. Proc. § 5-304(c)(3)(i).

ants, including individuals sued in their personal capacities.[38]
Because Johnson's complaint failed to allege actual or substan-
tial compliance with that provision, Counts 8, 9, and 10 (false
arrest and imprisonment, abuse of process, conspiracy to commit
those torts, and negligence) must be dismissed.  *See Hansen*, 25
A.3d at 130-31, 136 n.14.[39]

   D. Leave to Amend

   Because more than 21 days have passed since the motions to
dismiss were filed, Johnson may amend her complaint only if the
Defendants consent or with this Court's leave.  Fed. R. Civ. P.
15(a)(2); *Rice v. PNC Bank, N.A.*, No. PJM 10-0007, 2010 WL
1711496, at *2 (D. Md. Apr. 26, 2010).  Fed. R. Civ. P. 15(a)(2)
instructs that leave should be freely given when justice
requires.  Leave should be denied only when amendment would
prejudice the opposing party, amount to futility, or reward bad

---

[38] *See Chappelle v. McCarter*, 873 A.2d 458, 461 (Md. Ct. Spec.
App. 2005) ("[T]he notice requirement applies to an action for
unliquidated damages brought against a local government *or its
employees*") (emphasis in original)); *id.* at 462 (stating that
the notice requirement applicable to actions for unliquidated
damages against employees are not limited to actions in which
the employees were acting within the scope of employment).

[39] "[U]pon motion and for good cause shown the court may
entertain the suit even though the required notice was not
given."  Md. Code Ann., Cts. & Jud. Proc. § 5-304(d).  Because
Johnson has not made such a motion, the Court need not determine
whether good cause exists.  Similarly, the Court will not
address the City, McClelan, and Morton's alternative argument
that Johnson has not pled the elements of abuse of process and
negligence.  *See* ECF No. 6-1 at 17-19.

faith.   *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008).[40]   Because these concerns are not present, Johnson will be permitted to amend her complaint.

III. Conclusion

For the reasons stated above, Long and Taylor's motion to dismiss will be denied; the Police Department and Bealefeld's motion to dismiss will be granted; and the City, McClelan, and Morton's motion for partial summary judgment and to dismiss will be granted in part and denied in part.

_____1/28/13_____
Date

_____
William D. Quarles, Jr.
United States District Judge

---

[40] "An amendment is futile if it would fail to withstand a motion to dismiss." *Smyth-Riding v. Scis. & Eng'g Servs., Inc.*, No. WDQ-11-0558, 2012 WL 3114669, at *1 (D. Md. July 25, 2012).