IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

TORRIE JOHNSON,                      *

      Plaintiff,                  *

        v.                       *          CIVIL NO.: WDQ-12-0646

BALTIMORE CITY POLICE                *
DEPARTMENT, *et al.*,                *

      Defendants.                 *

  *    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

Torrie Johnson, *pro se*, sued Lynette Morton, Linda McLean,[1]
Adam Long, Bernard Taylor, and others[2] for civil rights
violations and Maryland state law claims.  On January 28, 2013,
the Court dismissed the claims against all defendants other than
Morton, McLean, Long, and Taylor.  *See* ECF No. 37.  The Court
also dismissed seven of Johnson's ten claims.  Pending are Long
and Taylor's motion for summary judgment on Johnson's remaining
claims under 42 U.S.C. § 1983[3] and Morton and McLean's similar

---

[1] In her complaint, court filings, and depositions, Johnson
refers to McLean as "McClelan."  *See, e.g.*, ECF No. 87 at 1.

[2] The other defendants were the Baltimore City Police Department,
the Mayor and City Council of Baltimore, former Baltimore City
Police Commissioner Frederick Bealefeld, Officers John and Jane
Does 1-1, Police Department supervisors Richard and Jane Roes 1-
10, and the Director -- on May 1, 2010 -- of the Baltimore City
Department of Transportation (the "BCDT") James Doe.  ECF No. 1.

[3] ECF No. 79.

motion.[4]  No hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2011).  For the following reasons, Long and Taylor's motion will be granted.  Morton and McLean's motion for summary judgment will be granted in part and denied in part.

I.  Background[5]

On May 1, 2010,[6] Johnson was driving her daughter's blue Jeep Cherokee northbound on Charles Street in Baltimore, Maryland.  ECF No. 79-1 at 7-8 (hereinafter "Johnson Dep. Vol. I").[7]  Johnson's daughter had several unpaid tickets on the vehicle.  Johnson Dep. Vol. I 27:20-22.  Johnson had no knowledge of the tickets.  *Id*. 28:1-7.

Johnson pulled over to the side of the road to take a telephone call.  *Id*. 22:3-12.  The engine remained running, and

---

[4] ECF No. 77.

[5] The facts are taken from Long and Taylor's motion, ECF No. 79; Morton and McLean's motion, ECF No. 77; Johnson's opposition, ECF Nos. 87-88; Long & Taylor's reply, ECF No. 92; Morton and McLean's reply, ECF No. 91; and their supporting exhibits.  In reviewing a motion for summary judgment, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in [her] favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[6] The May 1, 2010 date comes from Johnson's complaint.  ECF No. 1 at 3.  According to the Defendants, "other documents" indicate that the incident occurred on March 1, 2010.  ECF No. 6-1 at 2 n.1; ECF No. 15-1 at 2 n.1.  In her deposition, Johnson appeared confused about the date of the incident.  *See* ECF No. 79-1 at 7.

[7] Johnson was deposed twice on August 21 (ECF No. 79-1), and September 6, 2013 (ECF No. 79-2).

Johnson kept her foot on the parking brake.  ECF No. 88 at 2.

Before the call ended, a yellow Baltimore City van pulled up

next to Johnson's vehicle, blocking her ability to drive away.

Johnson Dep. Vol. I 22:8 to 23:17.  A few moments later, Morton

"banged" on the driver's side window and informed Johnson that

she was putting a boot on the car because it had unpaid parking

tickets.  *Id.* 24:17-22.  Morton "put this big like cardboard

looking thing, sign, notice rather, on the windshield."[8]  *Id.*

24:21 to 25:1.

Johnson placed the car in park, and the car shifted back

slightly because it was on an incline.  *Id.* at 25:5-13.  When

Johnson stepped out of the car to speak with Morton and McLean,

McLean accused Johnson of trying to run over her.  *Id.*  Johnson

explained that she had just placed the car in park, and the car

shifted back.  *See* ECF No. 79-2 at 12 (hereinafter "Johnson Dep.

Vol. II").

As Johnson approached the rear of the car, she saw McLean

installing a boot on the rear passenger's side tire.  Johnson

---

[8] Johnson does not remember when she read the notice.  Johnson
Dep. Vol 2. 78:10-15.  She describes it as "the notice they put
on your vehicle telling you don't move the vehicle."  *Id.* 78:18-
22.  Johnson has seen this notice before on cars and calls the
notice "routine."  *Id.*  Morton and McLean claim the notice was
the "standard scofflaw notice" that informs the owner of the car
"(1) the reasoning behind the installation of the parking boot,
(2) the means to contest the installation . . . and (3) the
methods to having the parking boot removed."  ECF No. 7-4 at 2-
3.  Johnson did not contest the content of the notice in her
response.  *See* ECF No. 87 at 2-3.

Dep. Vol. I 25:14-18.  Johnson told Morton and McLean that they could not boot her car because it was occupied and agents can only boot unoccupied vehicles.  *See id.* 26:1-3.  When McLean continued to boot the car, Johnson reached down and pulled the boot off the tire.  *Id.* 26:6-8.  McLean tried to install the boot, and Johnson removed it two more times.  *Id.*  Johnson repeated that they could not boot an occupied car.  *Id.* 26:13-14.

Morton took the boot from McLean and went to the front passenger's side tire to install it.  *Id.* 26:8-14.  Johnson followed Morton and stood behind her.  *Id.* 30:1-3.  When Morton tried to attach the boot, Johnson attempted to remove it again. *Id.* 26:15-16.  Morton elbowed Johnson in the face.  *Id.* 26:16-18.  Johnson stood up and did not try to remove the boot because "[she] didn't want to get in no fight."  *Id.*  Johnson called the Mayor's Office to report the incident.  *Id.* 19-20.  Morton called the police and reported that she had been assaulted.[9]  *See* ECF Nos. 79-3 at 1; 79-4 at 1.[10]

---

[9] Johnson could not hear the content of the call.  Johnson Dep. Vol. I 37:22 to 38:3.

[10] ECF No. 79-3 is the sworn declaration of Long.  ECF No. 79-4 is the sworn declaration of Taylor.

Long and Taylor[11] responded to Morton's call.  ECF No. 79-3 at 1.  Long was the supervising officer.  *Id.* at 3.  Morton and McLean explained to the officers that Johnson's car had outstanding parking violations and needed to be immobilized. *Id.* at 2; *see also* ECF No. 79-4 at 2.  Morton and McLean said that Johnson had assaulted Morton when she first left her vehicle by "shov[ing] [] Morton on her back and chest to try and prevent [] Morton from applying the parking boot."[12]  ECF No. 79-3 at 2.  They said after the assault, Johnson threw the boot under the vehicle.  *Id.*

Long and Taylor also interviewed Johnson, who was "aggressive and angry."  *Id.* at 3.  Johnson told the officers that Morton had struck her in the nose, and showed them the injury.  ECF No. 88 at 4.  Long was "aggressive" and "mean" to Johnson.  Johnson Dep. Vol. I 35:1 to 36: 19.  Long told Johnson he believed Morton because Morton was a city employee.  *Id.* Long further stated that Morton "just wanted an apology" from Johnson.  *Id.*  Johnson declined to apologize "for a crime she had not committed."  *Id.*

Long and Taylor believed that there was probable cause that Johnson had assaulted Morton.  *See* ECF Nos. 79-3 at 3; 79-4 at

---

[11] Taylor is no longer a police officer.  ECF No. 13 at 1 n.1.

[12] Johnson says that she never touched Morton.  Johnson Dep. Vol. I 37:17-21.

3.  Long directed Taylor to arrest Johnson.  Johnson Dep. Vol. I
38:4 to 39:17.  Johnson was briefly held at the Fayette Street
police station before being transported to Central Booking.  *Id.*
40:12-19.  Johnson was released between 11:00pm and midnight.
*Id.* 42:3-5.

One day later, Johnson's daughter paid the outstanding
tickets on the car, and the parking boot was removed.  Johnson
Dep. Vol. II 79:7-22.  Johnson was charged with second-degree
assault on Morton, and "was found not guilty" at trial.  *Id.*
66:10-21.[13]

On February 28, 2012, Johnson filed suit, *pro se*, against
the city, police department, and individual defendants under 42
U.S.C §§ 1983 and 1985 and Maryland tort law.  ECF No. 1 at 5-6.
On March 2, 2012, Johnson was granted leave to proceed *in forma
pauperis*.  ECF No. 3.  On January 28, 2013, the Court dismissed
the claims against all defendants other than Morton, McLean,
Long, and Taylor.  *See* ECF No. 37.  The Court also dismissed
seven of Johnson's ten claims.[14]

---

[13] The parties have provided no details about this trial.

[14] Johnson's remaining claims are:
> (3)   "Violation and Conspiracy to Violate Fourth and
>        Fourteenth Amendment Rights under 42 U.S.C [§] 1983--
>        Malicious Prosecution," against all individual Defendants
>        in their personal and official capacities;
> (6)   "Violation and Conspiracy to Violate Fourth[] and
>        Fourteenth Amendment Rights under 42 U.S.C. [§] 1983--
>        Freedom from Unreasonable Searches and Seizures," against

On October 11, 2013, Morton and McLean filed a motion for summary judgment on the remaining claims. ECF No. 77. Long and Taylor filed a similar summary judgment motion. ECF No. 79. On November 26, 2013, Johnson replied to Morton and McLean's motion. ECF No. 87. On December 2, 2013, Johnson replied to Long and Taylor's motion. ECF No. 88. On December 12, 2013, McLean and Morton replied. ECF No. 91. On December 19, 2013, Long and Taylor replied. ECF No. 92.

II. Analysis

  A. Legal Standard

    1. Summary Judgment

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[15] In considering the motion, the judge's function is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for

---

        all individual Defendants in their personal and official
        capacities;
  (7)   "Violation and Conspiracy to Violate First, Fourth, and
        Fourteenth Amendment Rights under 42 U.S.C. [§] 1983--
        False Arrest/False Imprisonment," against all individual
        Defendants in their personal and official capacities.

[15] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

trial." *Anderson,* 477 U.S. at 249.  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [her] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

B. Morton and McLean's Motion for Summary Judgment

Johnson appears to allege that Morton and McLean violated the Fourth and Fourteenth Amendments by unlawfully seizing her car and making false statements to police leading to Johnson's prosecution.  *See* ECF No. 1 at 5-6; ECF No. 87 at 4-6; *see also Johnson v. Balt. City Police Dept.,* No. WDQ-12-0646, 2013 WL 6048991, at *6 (D. Md. Jan. 29, 2013).  Morton and McLean argue that they are entitled to summary judgment because there were state procedures available for Johnson to contest the boot installation, and there was probable cause for Johnson's arrest. ECF No. 77-1 at 5, 9.

1. The Boot Installation

   a. Fourth Amendment

Under the Fourth Amendment, "[a] 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992) (*quoting United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).  Possessory interest in a vehicle is sufficient to invoke the Fourth Amendment. *See, e.g.*, *Morozov v. Howard Cnty.*, No. MJG-10-1515, 2012 WL 2048296, at *3 (D. Md. June 5, 2012).  "The Supreme Court [has] []emphasized that 'reasonableness is still the ultimate standard under the Fourth Amendment.'" *Coleman v. Watt*, 40 F.3d 255, 263 (8th Cir. 1994) (*quoting Soldal v. Cook Cnty.*, 506 U.S. 56, 71 (1992) (internal quotations omitted)).

Johnson argues that by placing a boot on an occupied vehicle in violation of city policy,[16] Morton and McLean unreasonably seized the car. *See* ECF No. 87 at 5-7.  Although

---

[16] Under Balt. City Code art. 31, § 31-21(a)(2),
>  When any unattended motor vehicle is found parked at any time upon any street of the City of Baltimore against which there are 3 or more unsatisfied citations for parking violations, and when a period of 30 days or more has elapsed since the 3rd unsatisfied citation, the [Police Commissioner of Baltimore or his designee] is authorized to cause such vehicle . . . immobilized in such manner as to prevent its operation.

Morton and McLean seek "summary judgment on all remaining counts,"[17] they do not address Johnson's Fourth Amendment claim in their arguments.[18]  In arguing against the due process claims, Morton and McLean assert that installing the boot was lawful because of the unpaid parking tickets on the vehicle.  *See* ECF No. 77-1 at 8.

The unpaid tickets on the car do not make McLean and Morton's boot installation lawful.  Under the city code, only a parked, unattended car is subject to immobilization.  *See* Balt. City Code art. 31, § 31-21(a)(2).  Here, Johnson was in the car, the engine was running, and she had her foot on the parking brake.  *See* ECF No. 88 at 2.  A reasonable jury could find that the seizure of the car was unreasonable if McLean and Morton knew that Johnson was in the vehicle, continued to install the boot, and called the police to remove Johnson and finish the installation process.  *Cf. Qutb v. Ramsey*, 285 F. Supp. 2d 33, 40 (D.D.C. 2003) ("For the police to tow a vehicle from private property—even an illegally parked one—only after they have chased away the car's lawful owner and confiscated his car keys,

---

[17] ECF No. 77 at 1.

[18] Morton and McLean argue that Johnson's *due process* claims relating to the book installation *must fail* because there were state remedies -- i.e., due process -- available to her.  *See* ECF No. 77-1 at 5.

may well amount to the kind of unreasonable seizure proscribed by Fourth Amendment.").

Accordingly, the Court will not grant summary judgment for Morton and McLean on Johnson's Fourth Amendment claim relating to the boot installation.

b. Procedural Due Process

"Procedural due process is simply a guarantee of fair procedures--typically notice and an opportunity to be heard." *Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008) (internal citations omitted).  Thus, "the existence of state remedies *is* relevant for a § 1983 action based on procedural due process, for [t]he constitutional violation actionable under § 1983 is not complete . . . unless and until the State fails to provide due process."[19]

To establish a procedural due process claim, a plaintiff must show that "(1) [she] had property or a property interest (2) of which the defendant deprived [her] (3) without due process of law." *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005).  "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified."[20]

---

[19] *Mora*, 519 F.3d at 230 (emphasis and alteration in original) (internal quotation marks omitted).
[20] *Baldwin v. Hale*, 68 U.S. (1 Wall.) 223, 233 (1863).

To determine whether an individual has received fair notice, a court "must examine the relevant facts of each case." *United States v. Hoechst Celanese Corp.*, 128 F.3d 216, 224 (4th Cir. 1997).

Johnson does not argue that she was denied a hearing after the boot installation.[21]   ECF No. 87 at 4-6.   However, she repeats her Fourth Amendment argument -- Morton and McLean's failure to follow the city code violated her due process rights.[22]   *Id.*   Morton and McLean assert that the existence of state procedures is fatal to Johnson's claim.   ECF No. 77-1 at 5-7.

Under Balt. City Code art. 31, § 31-25(a), the Commissioner or his designee must "conspicuously" place a notice on an immobilized car "sufficient to warn any individual that the vehicle has been immobilized."   The notice must also inform the owner of her right to a hearing.   § 31-25(a)(2).   Section 31-27(a)(1) describes the hearing procedures, providing that the car's owner "has the right to contest the validity of the

---

[21] Johnson does contend that she "was not the owner of the vehicle and therefore was not entitled to any of the procedural remedies indicated by Defendants."   ECF No. 87 at 5.   However, Johnson cites no city ordinance that limits the procedural remedies to the vehicle owner.   Nor does she assert that her attempts to vindicate her procedural rights were denied because she was the not the vehicle's owner.

[22] Johnson does not state whether she is arguing procedural or substantive due process, so the court will address both claims.

immobilization at a hearing within 72 hours . . . from the time said owner files an application for such hearing with a hearing officer." The hearing may be secured before payment of the booting fee or other charges, and before the immobilized car is released. *Id.* § 31-27(a)(2). The owner must file her application within 10 days of receiving written notice of the immobilization. *Id.* § 31-27(b)(2).

Courts have consistently held that a post-deprivation hearing within a reasonable time satisfies due process after the government tows or impounds a vehicle.[23] Although Morton and McLean did not follow every part of the city code, "the Due Process Clause of the Fourteenth Amendment is not violated when a state employee negligently [or intentionally] deprives an individual of property, provided that the state makes available a meaningful postdeprivation remedy." *Hudson v. Palmer*, 468 U.S. 517, 531, 533 (1984) (*citing Parratt v. Taylor*, 451 U.S. 527 (1981)). "Whether an individual employee [her]self is able to foresee a deprivation is simply of no consequence. The controlling inquiry is solely whether the state is in a position to provide for postdeprivation process." *Id.* at 534.

---

[23] *See, e.g., Miranda v. City of Cornelius*, 429 F.3d 858, 868-69 (9th Cir. 2005); *Goichman v. City of Aspen*, 859 F.2d 1466, 1468-70 (10th Cir. 1988); *DeFranks v. Mayor & City Council of Ocean City*, 777 F.2d 185, 187 (4th Cir. 1985); *Carcamo v. Miami-Dade-Cnty*, 284 F. Supp. 2d 1362, 1365 (S.D. Fla. 2003).

Here, Morton "put this big . . . sign, notice rather, on the windshield." Johnson Dep. Vol. I 24:21 to 25:1.  Morton and McLean contend that the notice contained all the information required by the city code.  ECF No. 7-4 at 2-3.  Johnson never argues that the information contained in the notice was insufficient.  *See* ECF No. 87 at 2-3.  Johnson simply did not use the state procedures available to her.  *See Richter v. Maryland*, 590 F. Supp. 2d 730, 738 (D. Md. 2008) ("As a matter of law, Richter's failure to take advantage of readily available procedural opportunities to avoid the destruction of his vehicle forecloses his claim that he was deprived of his procedural due process rights.").

Accordingly, the Court will grant summary judgment for Morton and McLean on the due process claim for the boot installation.

c. Substantive Due Process

Substantive due process protects the individual against arbitrary governmental action.  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998).  To establish a substantive due process claim, a plaintiff must show "state action so arbitrary and irrational, so unjustified by any circumstance or govern-mental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies."  *Mora*,

14

519 F.3d at 230 (internal quotation marks omitted).   "[M]inor
inconveniences are insufficient for this type of claim."
*Richter*, 590 F. Supp. 2d at 738.

Although some courts have found that an alleged failure to
follow city policy may sustain a substantive due process claim,[24]
the Fourth Circuit has held that substantive due process
violations "run only to state action so arbitrary and
irrational, so unjustified by any circumstance or governmental
interest, as to be literally incapable of avoidance by any pre-
deprivation procedural protections or of adequate rectification
by any post-deprivation state remedies." *Rucker v. Harford
Cnty., Md.*, 946 F.2d 278, 281 (4th Cir.1991).   Thus, Johnson's
substantive due process claim fails for much the same reason her
procedural one did: Morton and McLean's treatment of her is
hardly arbitrary when the state has given her the means to
correct the errors she alleges."   *Mora*, 519 F.3d at 231.

For these reasons, the Court will grant Morton and McLean's
motion for summary judgment on Johnson's substantive due process
claims relating to the boot installation.

---

[24] *See Boans v. Town of Cheektowaga*, No. 09-CV-37, 2014 WL
1056564, at *14 (W.D.N.Y. Mar. 14, 2014) (failure to follow a
tow policy is a substantive due process claim); *Matthews-Benson
v. Town of Cheektowaga*, No. 09-CV36, 2014 WL 870262, *12
(W.D.N.Y. March 4, 2014) (same).

2. False Statements to the Police

Johnson alleges that Morton and McLean lied to the police about Johnson assaulting Morton. *See* ECF No. 87 at 3-4. Johnson contends that Morton and McLean's actions violated her Fourth Amendment rights because they amount to malicious prosecution.[25]  ECF No. 1 at 5-6.  A § 1983 malicious prosecution claim requires Johnson to show that (1) Morton and McLean instituted a criminal proceeding against Johnson; (2) Morton and McLean did not have probable cause to institute the proceeding; and (3) the criminal proceedings have terminated in Johnson's favor.[26]  Morton and McLean argue that there was probable cause for Johnson's arrest and that Johnson "cannot establish that either Morton or McLean instigated the criminal proceedings against her."  ECF No. 77-1 at 9-11.

Probable cause is facts and circumstances "sufficient to warrant a prudent person, or one of reasonable caution, in

---

[25] Johnson also alleges that the malicious prosecution violated her Fourteenth Amendment rights, but the Fourth Circuit has held that a 42 U.S.C. § 1983 malicious prosecution claim is based on the Fourth Amendment. *See Lambert v. Williams*, 223 F.3d 257, 260-62 (4th Cir. 2000).  The Fourteenth Amendment is only relevant in that it extends the Fourth Amendment to the states. *See Boans*, 2014 WL 1056564, at *14.

[26] *Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir. 2005). "Although malice is required to state a claim for malicious prosecution at common law, the reasonableness of a seizure under the Fourth Amendment should be analyzed objectively." *Id*. at 514 n. 5.

16

believing, in the circumstances shown, that the suspect has
committed, is committing, or is about to commit an offense."
*Burrell*, 395 F.3d at 514 (*citing Wilson v. Kittoe*, 337 F.3d 392,
398 (4th Cir.2003)).  "What facts are sufficient to show want of
probable cause in any case, is, of course, a question of law for
the court; but whether such facts are proved by the evidence is
a question for the jury."  *Kennedy v. Crouch*, 62 A.2d 582, 587
(Md. 1948)).

     Morton and McLean contend that "[r]egardless of the fact
that [Johnson] disputes . . . that she committed an actual
battery . . . her admitted behaviors were enough to place a
reasonable person [in] imminent fear that a battery was
forthcoming and to thus provide probable cause for her arrest
and subsequent prosecution."  ECF No. 77-1 at 10.  Morton and
McLean assert that the car rolling back toward Morton and
McLean, Johnson forcibly removing the boot from McLean, and
Johnson standing over Morton as Morton attempted to attach the
boot are sufficient to establish probable cause.  *See id.*

     Morton and McLean's arguments do not resolve several
factual inconsistences.  Johnson was arrested for an assault on
Morton.  *See* Johnson Dep. Vol. I 38:4 to 39:17; Vol. II 66:10-
21.  The car rolled back toward *McLean* and Johnson explained
that she was just putting the car in park.  *See* Johnson Dep.
Vol. I 25:5-13.  Morton and McLean told the police that Johnson

17

had assaulted Morton, not that Morton was scared because Johnson

was standing behind her as she attached the boot.[27]  *See* ECF No.

87 at 5.  Whether Johnson truly pushed Morton, Morton reasonably

apprehended a battery when Johnson was standing behind her, or

Morton and McLean were merely retaliating against Johnson for

calling the Mayor's office as Johnson alleges,[28] is a question

for the jury to decide.[29]

Additionally, Johnson has provided sufficient facts for a

reasonable jury to conclude that Morton and McLean instituted

the criminal proceedings against Johnson.  Johnson asserts that

---

[27] If Johnson's behavior was threatening and Morton was
reasonably in imminent fear of a battery there was probable
cause for an assault.  However, Morton and McLean's inconsistent
statements to police as alleged by Johnson create a factual
dispute whether Morton was truly assaulted or Morton and McLean
were retaliating against Johnson.

  Although the Court must analyze the two summary judgment
motions separately and is considering the evidence separately in
determining the sufficiency of Johnson's claim, the Court notes
that Johnson's factual allegations about Morton and McLean's
behavior mirror the accounts of the police.  *See* ECF Nos. 79-3
at 2; 79-4 at 2; 87 at 4-6.

[28] *See* ECF No. 87 at 3-4.

[29] *Kennedy*, 62 A.2d at 587 (factual determinations that affect
probable cause are for the jury to decide); *see also Okwa v.
Harper*, 757 A. 2d 118, 127 (Md. 2000) ("[S]ummary judgment is
generally inappropriate when matters such as knowledge, intent,
and motive are at issue."); *Hines v. French*, 852 A.2d 1047, 1059
(Md. Ct. Spec. App. 2004) ("A jury could reasonably infer from
appellant's version of the events that Deputy French issued the
negligent driving citation as a means of insulating himself from
liability after not finding damage on appellant's vehicle and to
supply probable cause after it had evaporated by reason of
discovering appellant was not involved in the reported hit-and-
run.").

Morton told the police that Johnson had pushed Morton, and McLean confirmed Morton's story. *See* ECF No. 87 at 3-4.

These factual disputes require the Court to deny Morton and McLean's motion for summary judgment on the malicious prosecution claim.

C. Long and Taylor's Motion for Summary Judgment

Johnson alleged that Long and Taylor violated her Fourth and Fourteenth Amendment rights because their actions constitute false arrest, false imprisonment, and malicious prosecution. *See* ECF No. 1 at 5-6. Long and Taylor argue that they are entitled to summary judgment on all claims because they had probable cause to believe an assault had occurred, they are immune from suit, and they did not act in a manner that "shocks the conscience."[30] *See* ECF No. 79 at 9, 13, 16.

1. Probable Cause

False imprisonment, false arrest, and malicious prosecution require Johnson to show that Long and Taylor either lacked probable cause or legal justification in her arrest.[31] As

---

[30] Long and Taylor also argue that Johnson cannot show they acted with malice. ECF No. 79 at 14-15. However, this is not an element of a § 1983 malicious prosecution claim. *See Burrell*, 395 F.3d at 514.

[31] *See Burrell*, 395 F.3d at 514 (malicious prosecution); *Kelly v. Bencheck*, No. 96-6780, 1997 U.S. App. LEXIS 3316, at *4-5 (4th Cir. Feb. 24, 1997) (*per curiam*) (false arrest); *Ross v. Early*, 899 F. Supp. 2d 415, 430 (D. Md. 2012) (false arrest and false imprisonment).

19

previously discussed, probable cause is facts and circumstances "sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Burrell*, 395 F.3d at 514.   The Court must look to the facts Long and Taylor had available to them at the time of the arrest.[32]

---

False imprisonment and false arrest require a showing that Long and Taylor detained the plaintiff without legal justification rather than probable cause. *See Ross*, 899 F. Supp. 2d at 430.   "Courts equate legal justification with legal authority and look to the principles applicable to the law of arrest to determine whether the alleged deprivation was justified."   *Id.*   Thus, the presence of probable cause may be relevant to the legal justification analysis. *See Kelly*, 1997 U.S. App. LEXIS 3316, at *4 ("A plaintiff can only succeed in an action for false arrest under § 1983 if he can prove that the police officers lacked probable cause to arrest him."); McDaniel v. Arnold, 898 F. Supp. 2d 809, 848 (D. Md. 2012); *Branch v, McGeeney*, 718 A.2d 631, 642 (Md. Ct. Spec. App. 1998) ("The officers possessed probable cause to arrest appellant, which disposes of appellant's claims of malicious prosecution, false imprisonment, [and] false arrest . . . .") (internal citations omitted).

[32] *See Kelly v. Bencheck*, U.S. App. LEXIS 3316, at *5-6 ("In determining probable cause a reviewing court does not speculate as to the *subjective* mindset of the person arrested at the time of arrest. Instead, the court looks to the information that the officer had at the time of arrest. . .   The fact that Kelly was acquitted of the assault charge at his criminal trial does not alter the determination as to whether probable cause existed at the time of arrest.") (internal citations omitted).

Long and Taylor interviewed all the parties at the scene.[33]
They were told by both Morton and McLean that Johnson "shoved []
Morton on her back and chest to try and prevent [] Morton from
applying the parking boot." ECF Nos. 79-3 at 2; 79-4 at 2.
Morton and McLean also told Long and Taylor that, after
assaulting Morton, Johnson "grabbed the boot device and threw
the device under her vehicle." ECF No. 7-5 (statement of
probable cause). Long and Taylor observed Johnson acting
"aggressive and angry." ECF Nos. 79-3 at 3; 79-4 at 3.

Johnson's arguments are that Long was rude and aggressive
to her, and the officers chose to believe Morton and McLean
instead of her. *See* ECF No. 88 at 4-5. These arguments do not
show a lack of probable cause. Long and Taylor were required to
conduct "an objectively reasonable investigation with respect to
th[e] information [they had] in light of the ... circumstances
they faced." *Gooden v. Howard County,* 954 F.2d 960, 965 (4th
Cir.1992). "Reasonable law enforcement officers are not
required to 'exhaust every potentially exculpatory lead or
resolve every doubt about a suspect's guilt before probable

---

[33] In her response, Johnson contends that Taylor and Long did not
interview her. ECF No. 88 at 5. However, she then said that
she told the officers what happened. *Id.*; *see also* Johnson Dep.
Vol. I 35:1 to 36:19. Thus, Johnson appears to argue that her
conversations with Taylor and Long was not a full "interview" --
she does not contend that the conversations never occurred. *See*
ECF No. 88 at 5.

cause is established.'" *McDaniel v. Arnold*, 898 F. Supp. 2d 809, 841-42 (D. Md. 2012) (*quoting Wadkins v. Arnold*, 214 F.3d 535, 541 (4th Cir. 2000)).  Long and Taylor interviewed everyone involved and made a determination based on their experience. *See* ECF Nos. 7-3 at 3; 7-4 at 3.

  2. Qualified Immunity

Even if Taylor and Long lacked probable cause to arrest Johnson, their actions may have been protected by qualified immunity.

"Qualified immunity . . . shields government officials, including police officers, performing discretionary functions from civil damages pursuant to § 1983 as long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ross*, 899 F. Supp. 2d at 426 (internal citations omitted) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Thus, qualified immunity protects police officers who act "reasonably but mistakenly."[34]

---

[34] Anderson v. Creighton, 483 U.S. 635, 641 (1987); *see also McDaniel*, 898 F. Supp. 2d at 832-33.  This protection exists "regardless of whether [the police officer] ha[s] made a mistake of law or mistake of fact."  *Ross*, 899 F. Supp. 2d at 426 (*citing Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

Establishing qualified immunity is a two-step process: (1) whether the facts show that the official's conduct violated a constitutional right, and (2) whether the right was clearly established. *See Saucier v. Katz*, 533 U.S. 194, 201-02, 121 (2001). "[W]hether the right was clearly established [is] measured by 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Richter*, 590 F. Supp. 2d at 738 (*quoting* Saucier, 533 U.S. at 201, 121). In the Fourth Circuit, the plaintiff bears the burden of proof on the first prong, and the defendants bear the burden on the second. *Henry v. Purnell,* 501 F.3d 374, 377-78 (4th Cir. 2007).

Johnson has failed to carry her burden on the first prong because Taylor and Long had probable cause for the arrest.[35] Additionally, Long and Taylor have established that they acted in an objectively reasonable manner.[36] After interviewing all the parties at the scene, Long and Taylor made a probable cause determination informed by their experience. *See ECF Nos.* 7-3 at

---

[35] *See supra* Part II.C.1.

[36] *See Porterfield v. Lott,* 156 F.3d 563, 567 (4th Cir.1998) (deference should be given to government officials acting in good faith); *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir.1992) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."); *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir.1991) ("The ability of police officers to protect the public can be severely hampered . . . if their every decision is subject to second-guessing in a lawsuit.")

3; 7-4 at 3.   Considering Johnson's allegations, Long and Taylor
may have made a factual error about Morton and McLean's honesty.
*See* ECF No. 88 at 4-5.   Making a judgment based on the
information from multiple witnesses and the body language and
attitude of the suspect is not objectively unreasonable.   *See*
*McDaniel*, 898 F. Supp. 2d at 841-42.

### 3. Substantive Due Process

To violate substantive due process, a police officer's
conduct must be so arbitrary that it "shocks the conscience."
*See Lewis*, 523 U.S. at 845-46.   As the Court has previously
discussed, Long and Taylor's actions were objectively reasonable
and were not so "'brutal' and 'offensive' that [they] did not
comport with traditional ideas of fair play and decency."
*Breithaupt v. Abram,* 352 U.S. 432, 435 (1957); *see also Lewis*,
523 U.S. at 853 ("But when unforeseen circumstances demand an
officer's instant judgment, even precipitate recklessness fails
to inch close enough to harmful purpose to spark the shock that
implicates 'the large concerns of the governors and the
governed.'" (*quoting Daniels v. Williams,* 474 U.S. 327, 332
(1986)).

Accordingly, Long and Taylor's motion for summary judgment
will be granted.

III. Conclusion

For the reasons stated above, Long and Taylor's motion will be granted.   Morton and McLean's motion for summary judgment will be granted in part and denied in part.

_9/9/14_
Date

_____
William D. Quarles, Jr.
United States District Judge

25